**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JAMES SUMNER,

        Defendant.

No. 12-CR-92-LRR

**ORDER**

––––––––––––––––

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . **2**

III.   **RELEVANT TRIAL EVIDENCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

      A.    **June 16, 2011 Search** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
      B.    **Forensic Examination** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

IV.   **MOTION FOR JUDGMENT OF ACQUITTAL** . . . . . . . . . . . . . . . . . . **7**

      A.    **Legal Standard** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
      B.    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
            1.    **Counts 2 through 4: Possession of child pornography** . . . . . . **9**
                 a.    **Parties' arguments** . . . . . . . . . . . . . . . . . . . . . . . . **9**
                 b.    **Applicable law** . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
                 c.    **Discussion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
            2.    **Count 1: Receipt of child pornography** . . . . . . . . . . . . . . . **14**
                 a.    **Personally downloaded** . . . . . . . . . . . . . . . . . . . . **15**
                 b.    **Received by other means** . . . . . . . . . . . . . . . . . . . **17**
      C.    **Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

V.    **MOTION FOR NEW TRIAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

      A.    **Legal Standard** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
      B.    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

VI.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

# I.  INTRODUCTION

The matter before the court is Defendant James Sumner's "Motion for Judgment of Acquittal[ and] . . . Motion for New Trial" ("Motion") (docket no. 88).

# II.  RELEVANT PROCEDURAL BACKGROUND

On December 5, 2012, the government filed a five-count Indictment (docket no. 2) against Defendant.  Count 1 charged Defendant with receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1).  Counts 2 through 5 charged Defendant with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2).

On March 11, 2013, a jury trial on Counts 1 through 5 of the Indictment commenced.  On March 13, 2013, at the close of the government's evidence, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the court denied.  March 13, 2013 Minute Entry (docket no. 76).  On that same date, at the close of all of the evidence, Defendant renewed his motion for judgment of acquittal, which the court again denied.  *Id.*  On March 15, 2013, the jury returned guilty verdicts on Counts 1 through 4.  Jury Verdicts (docket no. 82) at 1, 6, 8, 10.  Because the jury concluded that Count 1 and Count 5 were based on the same facts, the jury did not reach Count 5.[1]  *Id.* at 5, 12.

---

[1] In the Final Jury Instructions, the court instructed the jury:

> A defendant may not be convicted of both receipt of child pornography and possession of child pornography if the receipt and possession are based on the same facts. . . . Count 1 is not based on the same facts as another count if you find that the defendant received the child pornography by personally downloading the image or images on a computer and then transferr[ed] the images to the CD or DVD referenced in Counts 2 through 5. . . . If you find that the defendant received the images under consideration by you by

(continued…)

On March 29, 2013, Defendant filed the Motion, in which Defendant "requests that the court grant [his] motion for judgment of acquittal on the grounds that the government failed to present sufficient evidence to establish the elements of all the crimes charged beyond a reasonable doubt." Motion at 1. Defendant also "conditionally and alternatively requests that the court grant him a new trial in the interest of justice on the ground that the jury verdict[s] [were] against the weight of the evidence." *Id.* On April 8, 2013, the government filed a Resistance (docket no. 89) to the Motion, arguing that there is sufficient evidence to sustain the jury's verdicts and that the verdicts are not against the weight of the evidence. Defendant did not file a reply, and the time for doing so has expired. *See* LR 7(g). Defendant requests a hearing on the Motion. The court finds that a hearing is unnecessary. The Motion is fully submitted and ready for decision.

---

[1](...continued)
> downloading the images on a computer before transferring the images to the CD or DVD, then you must go on to consider whether the defendant also possessed these images on the CD or DVD. If you find that the defendant did not receive the images under consideration by you by downloading the images on a computer, but, rather, received the images on the CD or DVD by other means, then do not go on to consider whether the defendant also possessed these images on the CD or DVD.

Instruction Number 16, Final Jury Instructions (docket no. 80) at 19; *see also* Jury Verdicts at 2-5 (requiring the jury to find whether Defendant downloaded the images on each CD and the DVD on a computer or whether he received the images on the CD or the DVD by other means). *See generally United States v. Huether*, 673 F.3d 789, 798 (8th Cir. 2012) ("While the government is not prohibited from charging [a defendant] with both a greater and lesser offense, the jury must be instructed that [it] cannot convict [the defendant] for both offenses based on the same facts.").

The jury found that Defendant downloaded the images on the CDs referenced in Counts 2 through 4 on a computer. Jury Verdicts at 3-4. The jury, however, found that Defendant received the images on the DVD referenced in Count 5 by other means. *Id.* at 5. Thus, in accordance with the Final Jury Instructions, the jury did not return a verdict for Count 5.

## III. RELEVANT TRIAL EVIDENCE[2]

Viewed in the light most favorable to the government, the trial evidence is as follows.

### A. June 16, 2011 Search

On June 16, 2011, law enforcement officers with the Cedar Rapids Police Department executed a search warrant for electronic media at Defendant's apartment. The apartment had two bedrooms and one bathroom. Defendant's fourteen-year-old son slept in one bedroom, Defendant's seven-year-old daughter slept in the other bedroom and Defendant slept in the living room.

During the course of the search, law enforcement officers found three Verbatim CD-Rs that a forensic investigator later determined contained sexually explicit images of minors. The officers discovered the CDs, referred to as Item Number 6, Item Number 9 and Item Number 10, in a box in the standard-sized closet in Defendant's daughter's bedroom. In the same box, the officers found a Verbatim Inkjet Printable DVD-R that included pictures of Defendant's wedding to his third wife and a picture of his son's preschool class. In the walk-in closet in Defendant's daughter's bedroom, the officers found a cigar box containing receipts listing Defendant's name and credit card number.

Law enforcement officers also found a Fujifilm mini-DVD, which a forensic investigator later determined contained a video that included sexually explicit images of minors. The officers found the mini-DVD in a tin container in a box, which was on a shelf in the linen closet in the bathroom. Of the approximately ten devices and eighty different types of media law enforcement found during the course of the search, only the three Verbatim CD-Rs and the Fujifilm mini-DVD contained sexually explicit images of minors.

---

[2] When relevant, the court relies on and discusses additional facts in conjunction with its analysis of the law.

While law enforcement officers conducted the search on June 16, 2011, Cedar Rapids Police Officers Jennifer Roberts and Craig VonSprecken interviewed Defendant in the living room of the apartment. During the interview, the officers inquired about two computers in the apartment—a laptop computer and a desktop computer. Defendant told the officers that he had recently thrown away the hard drive from his laptop computer because it was no longer functioning. Defendant explained that the hard drive had a virus, he was unable to fix it and, thus, just a few days prior to the search, he threw the laptop computer's hard drive in the apartment complex's dumpster. Defendant also advised Officers Roberts and VonSprecken that, sometime in November 2010, he had disposed of the hard drive from the desktop computer because it was "fried." June 16, 2011 Interview (Clip 3), Government's Exhibit 1 (docket no. 79-72) at 00:13. At the time of the search, the desktop computer, with no hard drive, was still set up at an entertainment center in the living room.

## B. Forensic Examination

Following the June 16, 2011 search, Joseph Schmitz, an investigator with the Cedar Rapids Police Department, conducted a forensic examination of the media seized from Defendant's apartment, including the three Verbatim CD-Rs and the Fujifilm mini-DVD. At trial, Investigator Schmitz explained that, although the CDs and the mini-DVD were in poor condition, he was able to retrieve images and other information from the disks. Specifically, Investigator Schmitz testified that he was able to determine the dates the individual files on the CDs finished downloading on a computer (the "modified dates"), the dates the CDs and the mini-DVD were created, or "burned," and the manner in which the files were organized on the CDs. Investigator Schmitz further testified that a CD or DVD does not store information related to what computer created the disk or whether anyone viewed files on the disk.

Investigator Schmitz's findings regarding the CDs and the mini-DVD are summarized as follows:

(1)     The Verbatim CD-R identified as Item Number 6 ("CD Number 6"), which is titled "Yungstuff," was first burned on May 28, 2007, and includes the following sexually explicit images of minors:

| Exhibit Number | Modified Date of File |
|---|---|
| Government's Exhibit 39 (docket no. 79-105) | 05/29/2007 at 01:43:45 |
| Government's Exhibit 40 (docket no. 79-106) | 05/29/2007 at 01:45:09 |
| Government's Exhibit 41 (docket no. 79-107) | 06/06/2007 at 16:59:14 |

(2)     The Verbatim CD-R identified as Item Number 9 ("CD Number 9"), which is titled "Cute Stuff," was burned on June 18, 2007, and includes the following sexually explicit images of minors:

| Exhibit Number | Modified Date of File |
|---|---|
| Government's Exhibit 45 (docket no. 79-111) | 06/16/2007 at 02:59:01 |
| Government's Exhibit 46 (docket no. 79-112) | 06/16/2007 at 03:38:49 |
| Government's Exhibit 47 (docket no. 79-113) | 06/16/2007 at 03:11:05 |

(3)     The Verbatim CD-R identified as Item Number 10 ("CD Number 10"), which is titled "fmimslp," was burned on April 29, 2007, and includes the following sexually explicit images of minors:

| Exhibit Number | Modified Date of File |
|---|---|
| Government's Exhibit 51 (docket no. 79-117) | 04/24/2007 at 22:54:16 |
| Government's Exhibit 52 (docket no. 79-118) | 04/24/2007 at 22:53:10 |
| Government's Exhibit 53 (docket no. 79-119) | 04/24/2007 at 23:09:58 |
| Government's Exhibit 54 (docket no. 79-120) | 03/07/2007 at 18:17:42 |

(4)     The Fujifilm mini-DVD identified as Item Number 1 ("mini-DVD") was burned on April 17, 2008.  The mini-DVD has a video that includes the following sexually explicit images of minors:

| Exhibit Number | Modified Date of File |
|---|---|
| Government's Exhibit 38, File VTS_01_1.VOB, at time 00:04 | April 16, 2008 |
| Government's Exhibit 38, File VTS_01_1.VOB, at time 00:52 | April 16, 2008 |
| Government's Exhibit 38, File VTS_01_1.VOB, at time 00:57 | April 16, 2008 |
| Government's Exhibit 38, File VTS_01_1.VOB, at time 01:46 | April 16, 2008 |
| Government's Exhibit 38, File VTS_01_1.VOB, at time 01:52 | April 16, 2008 |

## IV.  MOTION FOR JUDGMENT OF ACQUITTAL

### A.  Legal Standard

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal.  Fed. R. Crim. P. 29(c).  It is well-settled that jury verdicts are not lightly overturned.  *See, e.g.*, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005); *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999).  The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences.  *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006).  The court must uphold the jury's verdict so long as a reasonable-minded jury could have found the defendant guilty beyond a reasonable doubt.  *Id.*  Moreover, the court "must

uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence." *Id.* (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004)). It is not the province of the court to evaluate the credibility of witnesses—that task is for the jury. *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).

## B. Analysis

In the Motion, Defendant contends that there is insufficient evidence to support the jury's guilty verdict on Count 1, which charged Defendant with receiving child pornography. Defendant further contends that there is insufficient evidence to support the jury's guilty verdicts on Counts 2 through 4, which charged Defendant with possessing child pornography.

At trial, there was no direct evidence regarding Defendant's receipt of the child pornography. The government's theory of the case was that, because Defendant knowingly possessed the images of child pornography on the CDs and the mini-DVD and because the CDs and the mini-DVD were created using a computer, a reasonable jury could infer that Defendant was the person who downloaded the images and burned the disks.[3] Accordingly, the court deems it appropriate to first consider whether there is sufficient evidence that Defendant knowingly possessed the images of child pornography before turning to consider whether there is sufficient evidence that Defendant knowingly received the images, either by downloading them on a computer or by some other means.

---

[3] The court notes that the jury rejected this theory insofar as it relates to the mini-DVD. On the Interrogatory Form for Count 1, the jury found that Defendant did not personally download the images found on the mini-DVD. Jury Verdicts at 5. In light of this finding and consistent with the court's instructions, the jury did not reach Count 5, which charged Defendant with possessing the images on the mini-DVD.

### 1.    Counts 2 through 4: Possession of child pornography

#### a.    Parties' arguments

In his Brief in Support of the Motion, Defendant argues that the government failed to prove that he knowingly possessed the images of child pornography on the three CDs because "there was no evidence presented that Defendant created, burned, viewed or even touched any of the disks containing child pornography." Brief in Support of Motion (docket no. 88-1) at 4. Moreover, Defendant contends that the government presented no evidence suggesting that Defendant knew the CDs were in his apartment or that he knew what was on the CDs. Furthermore, Defendant claims that, because the CDs were in such poor condition, it is unlikely that Defendant would have known was what on the CDs.

At trial, Defendant suggested that the CDs and the mini-DVD belonged to someone else. Specifically, Defendant presented evidence that some time in 2007 or 2008, he had moved out of the home he shared with his ex-wife and moved into his parents' home. Because his parents' home was too small to store all of Defendant's belongings, Defendant stored his belongings in his brother's basement and at his sister's business. Defendant's brother testified that, at the time he was storing Defendant's belongings, he was also storing another person's belongings in his basement and, when the basement flooded, he moved everything in the basement such that it was all commingled. Defendant's sister testified that the area in which she stored Defendant's belongings was not secure and many people had access to Defendant's belongings. Defendant also presented evidence that there were items belonging to two of his ex-wives in his apartment.

In its Brief in Support of the Resistance, the government contends that there is sufficient evidence to support the jury's guilty verdicts on Counts 2 through 4. Specifically, the government argues that: (1) of three individuals living in the apartment, Defendant was the only person who could have knowingly possessed the child pornography; (2) there was evidence that Defendant stored his belongings in the same

bedroom where law enforcement officers found the three CDs containing child pornography; (3) the similar nature of the images suggests that the three CDs and the mini-DVD belonged to the same person and it is unlikely that another person's belongings would have accidentally ended up in two different locations in Defendant's apartment; and (4) Defendant's explanations as to why he disposed of his computer hard drives were implausible.

### b. Applicable law

A person violates 18 U.S.C. § 2252A(a)(5)(B) if the person:

> knowingly possesses . . . any . . . material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer . . . .

18 U.S.C. § 2252A(a)(5)(B). Thus, to prove that a defendant possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), the government must prove: (1) the defendant knowingly possessed an image of child pornography; (2) the defendant knew that the image was of a minor engaging in sexually explicit conduct; and (3) the image was mailed, shipped or transported in interstate or foreign commerce or the image was produced using materials that had been mailed, shipped or transported in interstate or foreign commerce. *See id*; *see also United States v. Kain*, 589 F.3d 945, 947 (8th Cir. 2009) (discussing 18 U.S.C. § 2252A(a)(5)(B)); Eighth Circuit Model Criminal Instruction 6.18.2252 (outlining the elements of possession of child pornography).

A defendant may have actual or constructive possession of the child pornography. *See Kain*, 589 F.3d at 949-50; *see also United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011) ("Possession may be either actual or constructive."). "'Actual possession means the defendant knowingly has direct physical control over a thing at a given time.'"

*Moreland*, 665 F.3d at 150 (quoting *United States v. Munoz*, 150 F.3d 401, 416 (5th Cir. 1998)); *see also United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011) (defining "actual possession" in the context of 18 U.S.C. § 922(g)(1)). "'[C]onstructive possession of contraband is established when a person has ownership, dominion or control over the pornographic material itself, or dominion over the premises in which the pornographic material is concealed.'" *United States v. Schwarte*, 645 F.3d 1022, 1033-34 (8th Cir. 2011) (alteration in original) (quoting *United States v. Acosta*, 619 F.3d 956, 961 (8th Cir. 2010)); *see also United States v. Terrell*, 700 F.3d 755, 765 (5th Cir. 2012) (discussing constructive possession), *cert. denied*, ___ S. Ct. ___, No. 12-9045, 2013 WL 800219 (Apr. 15, 2013).

### c. Discussion

As a preliminary matter, Defendant does not dispute that the images at issue constitute child pornography and that the CDs were manufactured outside of the State of Iowa, thereby satisfying the jurisdictional requirement. The court agrees that there is sufficient evidence supporting those elements of the offense. Moreover, Defendant does not contest that the CDs were in his apartment—that is, in his constructive possession. *See Schwarte*, 645 F.3d at 1033-34 (stating that constructive possession is established when the defendant has "dominion over the premises in which the pornographic material[s] [were] concealed"). Thus, the issue presented is whether there is sufficient evidence that Defendant *knowingly* possessed the images of child pornography. For the reasons set forth in the government's Resistance, the court finds that there is sufficient evidence.

First, as the government points out in its Brief in Support of the Resistance, the location of the three CDs suggests that they belonged to Defendant. Law enforcement officers discovered the CDs in the standard-sized closet in Defendant's daughter's bedroom—a bedroom that Defendant had slept in prior to his daughter moving into the apartment. There was evidence that, as of the date of the search, Defendant continued to

store belongings in the bedroom. Specifically, Lori Haack, Defendant's girlfriend, testified that Defendant kept his clothes in his daughter's bedroom. Moreover, law enforcement officers found a cigar box that had receipts bearing Defendant's name and credit card number in the walk-in closet in Defendant's daughter's bedroom. Finally, in the box in which law enforcement officers discovered the three CDs, there was also a Verbatim Inkjet Printable DVD-R that had pictures of Defendant's wedding to his third wife and a picture of his son's preschool class.

Second, the similar content of the three CDs and the mini-DVD suggests that they belonged to the same person. *See* Brief in Support of Resistance (docket no. 89-1) at 4 (explaining that there were images on each of the CDs and the mini-DVD depicting infants). Given that the CDs and the mini-DVD were found in two separate locations in the apartment—the CDs in the standard-sized closet in Defendant's daughter's bedroom and the mini-DVD in the linen closet in the bathroom—a reasonable jury could have rejected Defendant's suggestion that a third party's belongings, including the CDs and the mini-DVD, had become commingled with Defendant's belongings and somehow ended up in Defendant's apartment. *See id.* at 5 ("The possibility is remote that another person stored or lost child pornography, including infant images, in two separate locations in [D]efendant's apartment.").

Third, of the people living at the apartment, Defendant was the only likely person who would possess child pornography. Defendant's son, who was fourteen years old at the time of the search, would have been approximately ten years old at the time the CDs were created in 2007. Furthermore, Defendant's son testified that he had never looked at child pornography. The only other occupant of the apartment was Defendant's daughter, who was seven years old at the time of the search and would have been approximately three years old at the time the CDs were created.

Finally, there was evidence that Defendant disposed of two computer hard drives prior to the June 16, 2011 search and that he was aware that he was the subject of an investigation prior to the search. *See* June 16, 2011 Interview (Clip 2), Government's Exhibit 1 at 00:09 (admitting that Defendant "kinda knew [they were] coming"). Defendant explained to Officers Roberts and VonSprecken that he disposed of his desktop computer's hard drive sometime in November 2010 because it was "fried." June 16, 2011 Interview (Clip 3), Government's Exhibit 1 at 00:13. When officers searched the apartment on June 16, 2011—approximately six to seven months after Defendant had allegedly disposed of the hard drive—the computer tower, with no hard drive, and a monitor were still set up at an entertainment center and the computer tower still had cables, including a yellow ethernet cord, attached. *See* Photograph, Government's Exhibit 7 (docket no. 79-78); Photograph, Government's Exhibit 9 (docket no. 79-80); Photograph, Government's Exhibit 10 (docket no. 79-81).

Defendant also explained to Officers Roberts and VonSprecken that he disposed of his laptop computer's hard drive just a few days prior to the search. Defendant claimed that the laptop computer's hard drive had a virus, he attempted to fix it and, when he was unable to fix it, he threw the hard drive in the apartment complex's dumpster. However, at trial, Haack acknowledged that she testified before the grand jury that Defendant had taken his laptop computer to Best Buy to have it fixed and that, when Defendant picked the computer up from Best Buy, "everything was fine."

A reasonable jury could have concluded that Defendant's explanations for the missing hard drives were implausible. In particular, the jury could have found that it was unlikely that Defendant's desktop computer's hard drive had "fried" and yet, six to seven months later, Defendant still had the inoperable computer set up with cables attached. Moreover, the jury could have been suspicious of Defendant's reason for disposing of his laptop computer's hard drive just a few days prior to the search, particularly in light of

Haack's testimony that Defendant had taken his laptop computer to Best Buy and had it fixed. Given Defendant's implausible explanations, the jury could have determined that Defendant disposed of the hard drives because they contained child pornography.

Thus, in light of the foregoing, the court finds that there is sufficient evidence that Defendant knowingly possessed the images of child pornography on CD Number 6, CD Number 9 and CD Number 10. The court recognizes that this case presents a close call; however, twelve jurors were able to reach a unanimous decision that Defendant knowingly possessed the images at issue based on the circumstantial evidence discussed above. While the evidence may not have been overwhelming, it is sufficient to sustain the jury's findings of guilt on Counts 2 through 4. *See Peters*, 462 F.3d at 957.

### 2.    *Count 1: Receipt of child pornography*

Having determined that there is sufficient evidence that Defendant knowingly possessed child pornography, the court now turns to consider whether there is sufficient evidence that Defendant knowingly received child pornography. A person violates 18 U.S.C. § 2252(a)(2) if the person:

> knowingly receives . . . any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer . . . if—
>
> (A)    the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (B)    such visual depiction is of such conduct . . . .

18 U.S.C. § 2252(a)(2). Thus, to prove a defendant received child pornography in violation of 18 U.S.C. § 2252(a)(2), the government must prove: (1) the defendant knowingly received a visual depiction of child pornography; (2) the defendant knew that the visual depiction was of a minor engaging in sexually explicit conduct; and (3) the

visual depiction was mailed, shipped or transported in interstate or foreign commerce or the visual depiction was produced using materials that had been mailed, shipped or transported in interstate or foreign commerce. *See id*; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68, 78 (1994) (discussing 18 U.S.C. § 2252(a)(2)); Eighth Circuit Model Criminal Instruction 6.18.2252 (outlining the elements of receipt of child pornography).

As noted above, the jury found that Defendant personally downloaded the images of child pornography found on CD Number 6, CD Number 9 and CD Number 10. The jury, however, found that Defendant received the images on the mini-DVD by other means. The court first addresses whether there is sufficient evidence to support a finding that Defendant personally downloaded the images on the CDs. Because the court concludes that the record is devoid of any such evidence, the court then turns to consider whether there is sufficient evidence that Defendant received the images on the CDs and the mini-DVD by some other means.

### a. Personally downloaded

In his Brief in Support of the Motion, Defendant argues that "[t]he government presented no evidence that Defendant looked at, or downloaded, images of child pornography via computer." Brief in Support of Motion at 3. In response, the government contends there is sufficient evidence to support the jury's finding that Defendant personally downloaded the images contained on CD Number 6, CD Number 9 and CD Number 10 because the images were downloaded from the internet and the CDs were created using a computer. The government argues that, because there is sufficient evidence that Defendant knowingly possessed the images, a reasonable jury could infer that he was the individual who downloaded the images and burned them to the CDs.

After reviewing the record, the court concludes that there is no evidence that Defendant was the individual who downloaded the images and burned the CDs.

Investigator Schmitz testified that the time stamps for the images on CD Number 6, CD Number 9 and CD Number 10 were all 2007 dates. Investigator Schmitz further testified that these time stamps reflect the dates that the images finished downloading on a computer. Investigator Schmitz also testified that all three CDs were created in 2007. The record, however, is devoid of any evidence that Defendant owned a computer in 2007 or that he had internet access in 2007. During the June 16, 2011 search, Defendant indicated that he got his laptop computer approximately a year and a half prior to the search—likely in December 2009. Thus, Defendant did not have the laptop in 2007 when the images at issue were downloaded and the disks were created. Defendant's other computer was a desktop computer. The government did not present evidence regarding when Defendant got the desktop computer. Moreover, the age of the desktop computer is not readily apparent from the photographs law enforcement officers took. *See* Photograph, Government's Exhibit 6 (docket no. 79-77); Photograph, Government's Exhibit 7; Photograph, Government's Exhibit 8 (docket no. 79-79); Photograph, Government's Exhibit 9; Photograph, Government's Exhibit 10. Thus, there is no evidence from which a reasonable jury could conclude that Defendant used the desktop computer to download the images on CD Number 6, CD Number 9 and CD Number 10.

The only possible clue that Defendant may have had a computer in 2007 is the Verbatim Inkjet Printable DVD-R that law enforcement officers recovered from the same box as CD Number 6, CD Number 9 and CD Number 10. The Verbatim Inkjet Printable DVD-R contained personal pictures, including pictures from Defendant's wedding to his third wife and a picture of his son's preschool class. The modified dates on these photographs, or the dates the files finished downloading on a computer, ranged from 2005 to 2007. Although the nature of the pictures on the Verbatim Inkjet Printable DVD-R suggest that the disk belonged to Defendant, there is no evidence in the record from which

a reasonable jury could conclude that Defendant himself created the Verbatim Inkjet Printable DVD-R.

The court is unpersuaded by the government's argument that a reasonable jury could infer that Defendant personally downloaded the images solely because the images were downloaded at some point and Defendant knowingly possessed the images when law enforcement searched his apartment on June 16, 2011. Such an inference is not warranted absent some evidence that Defendant had access to a computer on the dates the images were downloaded. Accordingly, the court concludes that there is insufficient evidence that Defendant personally downloaded the images on CD Number 6, CD Number 9 and CD Number 10.

### b.      Received by other means

The court now turns to consider whether there is sufficient evidence that Defendant knowingly received the images on CD Number 6, CD Number 9, CD Number 10 and the mini-DVD by some means other than personally downloading them on a computer. The court has already concluded that Defendant knowingly possessed the images; thus, it is plain that Defendant must have received the images as some point. The more complicated question is whether there is sufficient evidence that Defendant *knowingly* received the images on the CDs and the mini-DVD.

Under 18 U.S.C. § 2252(a)(2), a "defendant convicted of receiving child pornography must have known, not just that he was receiving *something*, but that what he was receiving was child pornography." *United States v. Szymanski*, 631 F.3d 794, 799 (6th Cir. 2011); *see also X-Citement Video, Inc.*, 513 U.S. at 78 ("[T]he term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to the age of the performers."). In this case, there is no evidence as to how Defendant came into possession of the CDs and the mini-DVD. Thus, to sustain the jury's guilty verdict as to Count 1, the court would have to find that Defendant's knowing possession of the CDs and the mini-

DVD necessarily means that he knowingly received them. The court cannot reach such a conclusion. While it is axiomatic that a person who knowingly receives an item must also knowingly possess it, "even if only for a moment," *United States v. Ehle*, 640 F.3d 689, 695 (6th Cir. 2011), the reverse is not always true—that is, a person could knowingly possess an item without having also knowingly received it. *See id.* at 698 (noting that the possession of child pornography statute "was meant as a gap-filling provision, targeting those who 'possessed' child pornography without having also 'received' the same child pornography").

For instance, in this case, Defendant could have received a box containing the CDs and the mini-DVD. At the time he received the box, he could have been unaware of its contents. If Defendant then opened the box, found the CDs and the mini-DVD and then viewed the images on the CDs and the mini-DVD, Defendant would thereafter be in knowing possession of the child pornography images without ever having knowingly received them. *See Szymanski*, 631 F.3d at 799; *X-Citement Video, Inc.*, 513 U.S. at 78.

Thus, because there is no evidence regarding Defendant's receipt of the images on CD Number 6, CD Number 9, CD Number 10 and the mini-DVD and because the court cannot conclude that Defendant knowingly received the images on the CDs and the mini-DVD based solely on the fact that Defendant knowingly possessed them, the court cannot sustain the jury's guilty verdict as to Count 1.

## C. Summary

For the foregoing reasons, the court finds that there is sufficient evidence to support the jury's guilty verdicts as to Counts 2 through 4. Thus, the court shall deny the Motion to the extent it seeks a judgment of acquittal on Counts 2 through 4. However, the court finds that there is insufficient evidence to sustain the jury's guilty verdict as to Count 1. Thus, the court shall grant the Motion to the extent it seeks a judgment of acquittal on Count 1.

# V.  MOTION FOR NEW TRIAL

## A.  Legal Standard

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  A district court is granted broad discretion in considering a motion for a new trial. *Peters*, 462 F.3d at 957.  A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (quoting *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992)) (internal quotation mark omitted).  However, the court "should grant a new trial only if 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *Peters*, 462 F.3d at 957 (quoting *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579.  District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).  The court's standard of review differs from the standard that is applied to a motion for judgment of acquittal:

> When a motion for new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal.  The question is not whether the defendant should be acquitted outright, but only whether he should have a new trial.  The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.  If the court concludes that, despite the abstract sufficiency of

> the evidence to sustain the verdict, the evidence preponderates
> sufficiently heavily against the verdict that a serious
> miscarriage of justice may have occurred, it may set aside the
> verdict, grant a new trial, and submit the issues for
> determination by another jury.

*Lincoln*, 630 F.2d at 1319; *see also United States v. Johnson*, 474 F.3d 1044, 1050-51 (8th Cir. 2007) (reiterating applicable standard).

### B. Analysis

In his Brief in Support of the Motion, Defendant argues that the weight of the evidence is contrary to the jury's verdicts on all counts for the same reasons he discussed in relation to his motion for judgment of acquittal. In response, the government acknowledges that "[t]he [c]ourt has broader discretion to grant a new trial than it has to grant a motion for judgment of acquittal; this includes the discretion to weigh the evidence and disbelieve witnesses. However, [D]efendant identifies no evidence presented by the government that he contends should be disbelieved." Brief in Support of Resistance at 10. Accordingly, the government contends that the court should deny Defendant's request for a new trial for the same reasons the government contends Defendant is not entitled to a judgment of acquittal on Counts 1 through 4.

The court has already determined that there is insufficient evidence to sustain the jury's guilty verdict as to Count 1. Under Rule 29(d)(1), "[i]f the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination." Fed. R. Crim. P. 29(d)(1). In the event that the Eighth Circuit Court of Appeals reverses the court's ruling that there is insufficient evidence to sustain the jury's guilty verdict as to Count 1, the court finds that the jury's verdict as to Count 1 is "contrary to the weight of the evidence," *Lincoln*, 630 F.2d at 1319, for the same reasons discussed with respect to Defendant's

motion for judgment of acquittal. Accordingly, the court shall conditionally grant the Motion to the extent it seeks a new trial on Count 1 based on the weight of the evidence.

However, for the same reasons discussed with respect to Defendant's motion for judgment of acquittal, the court finds that the evidence as to Counts 2 through 4 did not "preponderate[] sufficiently heavily against the verdict[s]." *Id.* As the court noted above, the evidence in this case may not have been overwhelming, but, based on the circumstantial evidence supporting the jury's verdicts, the court cannot conclude "that a serious miscarriage of justice may have occurred." *Id.* Accordingly, the court shall deny the Motion to the extent it seeks a new trial on Counts 2 through 4 based on the weight of the evidence.

## VI. CONCLUSION

In light of the foregoing, the court **HEREBY ORDERS**:

(1)     Defendant James Sumner's "Motion for Judgment of Acquittal[ and] . . . Motion for New Trial" ("Motion") (docket no. 88) is **GRANTED IN PART** and **DENIED IN PART**;

(2)     Count 1 of the Indictment (docket no. 2) is **DIRECTED OUT**;

(3)     In the event that the Eighth Circuit Court of Appeals reverses the court's ruling as to Count 1, the court grants Defendant's motion for new trial as to that count pursuant to Federal Rule of Criminal Procedure 29(d)(1); and

(4)     In light of the court's ruling as to Count 1, Count 5 remains pending.

**DATED** this 16th day of May, 2013.


LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA